UNITED STATES COURT OF APPEALS
FOR THE FIRST CIRCUIT

TIMOTHY NOLL, individually and
on behalf of similarly situated individuals,

Plaintiff-Respondent,

v.

FLOWERS FOODS, INC.; LEPAGE BAKERIES
PARK STREET LLC; and CK SALES CO., LLC,

Defendants-Petitioners.

On Appeal from the United States District Court
for the District of Maine

Case No. 1:15-cv-493-LEW

Lance E. Walker, District Court Judge

## PLAINTIFF'S RESPONSE TO DEFENDANTS' PETITION
## FOR LEAVE TO APPEAL PURSUANT TO RULE 23(f)

Shawn J. Wanta
Scott Moriarity
BAILLON THOME JOZWIAK & WANTA LLP
100 South Fifth Street, Suite 1200
Minneapolis, MN 55402
612-252-3570
612-252-3571 (fax)
***Counsel for Plaintiff***

# TABLE OF CONTENTS

I. Introduction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   1

II. Background . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   3

III. Discussion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   7

    A. Defendants have not demonstrated any "irresistible pressure to settle" that signals the death knell of their case. . . . . . . . . . . . . . . . . . . . . .   8

    B. Defendants have not identified an unsettled *and* important question that calls for clarification of a fundamental issue on interlocutory appeal.   9

        1. Because Defendants' petition concedes a legal question common to the class, and because the District Court's commonality ruling is based on well-settled principles of law, there is no "fundamental issue" as to commonality. . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   10

        2. Because the District Court properly examined whether Plaintiff's claims and those of Distributors arise out of a common course of conduct, there is no "fundamental issue" as to typicality. . . .   12

        3. Defendants' mischaracterization of the District Court's order, coupled with the absence of legal error, indicate no "fundamental issue" as to predominance. . . . . . . . . . . . . . . . . . . . . . . . . . .   14

            a. Defendants misstate the facts and analysis that form the basis for the District Court's predominance ruling. . .   14

            b. Because Defendants' FAAAA preemption argument lacks merit and was not dispositive in the District Court's class certification order, it cannot supply a "fundamental issue." . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   17

    C. Defendants have not asserted other special circumstances that call for an interlocutory appeal. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   19

IV. Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   20

# TABLE OF AUTHORITIES

Federal Rules

Fed. R. Civ. P. 23(a)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   10

Fed. R. Civ. P. 23(a)(3) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   12

Fed. R. Civ. P. 23(b)(3) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   16

Fed. R. Civ. P. 23(f) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   7


State Statutes

Mass. Gen. Laws ch. 149, § 148B(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   17


Federal Cases

*California Trucking Ass'n v. Su*, 903 F.3d 953 (9th Cir. 2018) . . . . . . . . . . .   19

*Dalton v. Lee Pubs.*, 270 F.R.D. 555 (S.D. Cal. 2010) . . . . . . . . . . . . . . .   11 n. 4

*DaSilva v. Border Transfer of MA, Inc.*, 296 F. Supp. 3d 389 (D. Mass. 2017) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   11 n. 4

*Flowers Foods, Inc. v. Rehberg*, No. 15-161 (4th Cir.) . . . . . . . . . . . . . . .   8-9 n. 1

*Garcia-Rubiera v. Calderon*, 570 F.3d 443 (1st Cir. 2009) . . . . . . . . . . . . . .   13

*Meyer v. U.S. Tennis Ass'n*, 297 F.R.D. 75 (S.D.N.Y. 2013) . . . . . . . . . . .   11 n. 4

*Nerland v. Caribou Coffee Co.*, 564 F. Supp. 2d 1010 (D. Minn. 2007) . .   11 n. 4

*In re Neurontin Mktg. & Sales Pracs. Litig.*, 244 F.R.D. 89 (D. Mass. 2007)   13

*Phelps v. 3PD, Inc.*, 261 F.R.D. 548 (D. Or. 2009) . . . . . . . . . . . . . . . . .   11 n. 4

*In re Sepracor Inc.*, No. 05-8101, 2005 WL 3782325 (1st Cir. Dec. 7, 2005)

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8-9, 13

*Rehberg v. Flowers Baking Co. of Jamestown, LLC*, No. 12-596, 2015 WL
1346125 (W.D.N.C. Mar. 24, 2015) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11 n. 4

*Schwann v. FedEx Ground Package System, Inc.* 813 F.3d 429 (1st Cir. 2016)
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17-18

*Scovil v. FedEx Ground Package Sys., Inc.*, 886 F. Supp. 2d 45 (D. Me. 2012)
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 15-16

*Tardiff v. Knox County*, 365 F.3d 1 (1st Cir. 2004) . . . . . . . . . . . . . . . . . . . . 8

*Venegas v. Global Aircraft Serv., Inc.*, 159 F. Supp. 3d 93 (D. Me. 2016)      11, 16

*Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011) . . . . . . . . . . . . . . . . . . 10

*Waste Mgmt. Holdings, Inc. v. Mowbray*, 208 F.3d 288 (1st Cir. 2000)   7-9, 13, 21

## State Cases

*Legassie v. Bangor Pub. Co.*, 1999 ME 180, 741 A.2d 442 (Me. 1999) . . . . . 16

*Murray's Case*, 130 Me. 181, 154 A. 352 (Me. 1931) . . . . . . . . . . . . . . . . . 3, 6

# I. INTRODUCTION

Defendants fail to state grounds for an extraordinary, interlocutory appeal, and instead complain about the District Court's conclusions as if they were entitled to de novo review as of right. This Court has clearly articulated the narrow circumstances under which it considers Rule 23(f) interlocutory appeal: when a defendant can show that class certification will force it to settle, despite the merits of its defenses; or where appeal is needed to clarify a fundamental issue of law.

Defendants do neither. They say nothing about their economic risk, nor could they, as prospective damages in this case would be an inconsequential fraction of Defendants' annual revenues. And while Defendants claim there are fundamental issues, they cite no principle of law needing clarification, instead complaining about the sufficiency of the evidence. As a result, Defendants cannot meet the burden to justify appellate review.

The District Court's certification ruling was sound and well within its ample discretion. The key question before the District Court was whether common, predominant proof can determine the classification of Distributors as employees or independent contractors under Maine's right-to-control test. Rather than addressing the findings and reasoning of the District Court, Defendants obfuscate the record, then fault the District Court for rejecting their misdirected analysis.

To decide whether a worker is classified as an employee or an independent contractor, Maine law requires courts to set aside evidence of actual control and focus on the putative employer's *right* to control. Plaintiff offered evidence of materially identical Distributor Agreements; common controls over class members' tools, procedures, and practices; common controls over pricing and marketing; and common authority to discipline Distributors by asserting breach of their Distributor Agreements. Most critically, Plaintiff showed that Defendants, in their regular day-to-day business, uniformly classify all Distributors as independent contractors.

Defendants admit they never assessed individual Distributors' circumstances before uniformly classifying them as independent contractors. Only in litigation have Defendants argued about such "individual differences." But to demonstrate these differences, Defendants rely on evidence of actual control, not the right to control. Their petition strains to avoid this problem, relying heavily on individual anecdotes that allegedly show Defendants' "reported right to control." (*See, e.g.,* Pet. at 7.) This so-called "reported right to control" is simply another way of saying "actual control," which is the wrong standard.

The District Court directly confronted Defendants' narrative and rejected it. Analyzing Defendants' arguments, the District Court found "various members of the class describe their day-to-day subjective experience differently, and in potentially significant ways[,]" but those individual differences would not predominate unless

they were "the real drivers of the employee-status analysis that must be applied under Maine common law." (Order at 5-6.) After carefully examining that standard, the District Court concluded that "proof of the right to control rests upon predominantly common evidence." (*Id.* at 7.) The District Court had ample discretion to find common, predominant proof and reject Defendants' myriad anecdotal "reports."

Through their petition, Defendants seek to disrupt years of litigation and encroach upon the sound discretion of the District Court. Plaintiff put a voluminous class certification record before the District Court at and, relying on that record, Plaintiff is ready to represent all Distributors at trial. Defendants failed to identify issues that cannot be fairly resolved in future proceedings before the District Court. For these reasons, Plaintiff respectfully requests that Defendants' petition be denied.

## II.    BACKGROUND

Under Maine common law, to decide whether a worker is properly classified as an employee or an independent contractor, the overriding factor is the right to control. *See, e.g., Taylor v. Kennedy*, 719 A.2d 525, 528 (Me. 1998). (*See also* Order at 7 ("Ultimately, it is the right to control that is demonstrative of an employer-employee relationship[.]").) As a result, in classification analysis, evidence of actual control has "doubtful relevance." *Scovil*, 886 F. Supp. 2d 45, 54 (D. Me. 2012) (parenthetically quoting *Murray's Case*, 130 Me. 181, 154 A. 352, 354 (Me. 1931)

for the proposition that "[i]t is not … actual interference with the control, but the right to interfere, that makes the difference").

As demonstrated by Plaintiff's motion for class certification and its supporting exhibits, Defendants require all Distributors to sign materially identical Distributor Agreements. (Doc. No. 191-4 at 3; Doc. No. 191-17.[1]) Under those agreements, Defendants purport to sell baked goods to Distributors at a wholesale price; for each unit the Distributor sells through a retailer, Distributors earn the difference between the wholesale price and the retail price. (Doc. No. 192-9 at *18, *21-*22; *see also* Doc. No. 191 at *26-*27.)

Distributors' work primarily consists of picking up goods from Defendants' warehouses, delivering them to retailers, and stocking them on the shelves. (Doc. No. 191-37 at *25; Doc. No. 192-3 at *7-*8; Doc. No. 192-7 at *11-*12; Doc. No. 192-9 at *14.) Most retailers—making up over 95% of Distributors' sales—are major "credit accounts" with large grocery stores or restaurants. (Doc. No. 192-9 at *16-*17, *23.) Pricing and marketing for these accounts are handled by Defendants' centralized sales and marketing teams. (Doc. No. 191-9 at *3, *4-*5; Doc. No. 191-10 at *4; Doc. No. 192-7 at *24.)

---

[1]    Record citations are by Docket Number in the District Court file, using the pagination applied by the ECF system (not the pagination in the original document).

Defendants require all Distributors to use a proprietary handheld computer, which tracks product inventory and pricing. (Doc. No. 191-25 at *15; Doc. No. 192-7 at *9; Doc. No. 191-50.) Through a centralized computer interface, Defendants are able to unilaterally adjust Distributors' orders, by increasing existing orders or adding new products. (Doc. No. 191-25 at *18; Doc. No. 192-7 at *13-*15; Doc. No. 192-19; Doc. No. 192-20.) For sales to major credit accounts, the handheld prevents Distributors from adjusting prices, giving Defendants exclusive control and limiting Distributors' opportunities for profit. (Doc. No. 191-25 at *10, *28-*29; Doc. No. 192-9 at *10, *11; Doc. No. 191-55; Doc. No. 191-56.)

The Distributor Agreements require Distributors' work to conform to "best efforts" and "good industry practice." (Doc. No. 191-17 §§ 2.6, 5.1.) Defendants interpret these terms within their sole discretion. (Doc. No. 191-15 at *7, *8, *12.) To ensure Distributors comply with Defendants' expectations, Defendants deploy field sales and marketing teams, who check retail shelves for adequate inventory and product presentation. (Doc. No. 191-20 at *7-*8; Doc. No. 192-6 at *23, *25.) Defendants also require Distributors to comply with major accounts' "service requirements." While Defendants argue these requirements originate from the retailers, Defendants directly communicate these requirements to Distributors, and Defendants sometimes help create them as well. (Doc. No. 191-19 at *4; Doc. No. 192-16 at *3-*6, *11, *12.)

When they believe Distributors' work is deficient, Defendants have unilateral discretion to issue a "breach letter" and threaten termination. (Doc. No. 191-17 § 17; Doc. No. 191-25 at *24, *26-*27.) Defendants can also inflict punitive reductions in pay by adjusting Distributors' "stale cap," reducing the quantity of stale product Defendants will buy back from Distributors. (Doc. No. 191-17 § 12.2; Doc. No. 192-6 at *19.)

In their petition, Defendants argue some Distributors could be "improperly classified, while many other Distributors [are] not[.]" (Pet. at 15.) But in their regular business operations, they have no difficulty uniformly classifying all Distributors in whatever way suits Defendants best. To decide whether Distributors are employees or independent contractors under Maine wage laws, Defendants' *sole criterion* is whether the Distributors signed a Distributor Agreement. (Doc. No. 191-15 at *20-*21.) Defendants also uniformly classify Distributors as statutory employees under federal tax laws. (*See* Doc. No. 191-70.)

Defendants' petition ignores common evidence of their uniform practices, procedures, and controls. Citing anecdotal testimony from Distributors, Defendants instead offer a litany of individual "reports." (*See* Pet. at 6 ("Distributors *report* having the right … to influence product placement[.]"), 7 ("[Distributors] *report* … that they have discretion to set prices[.]").) But this "*reported right to control*" (Pet. at 7) only demonstrates how Defendants *actually* exercise their control, making the

"reports" irrelevant to whether Defendants retain the *right* to control. *Cf. Murray's Case*, 130 Me. 181, 154 A. at 354 ("[I]t is not … actual interference with control, but the right to interfere, that makes the difference.").

By focusing on individual Distributors' reports, Defendants intentionally select sources with no direct knowledge or understanding of Defendants' retained rights, then argue those peripheral sources do not demonstrate their right to control. But the best evidence of Defendants' reserved rights of control, which the District Court properly considered, comes from Defendants' corporate practices, procedures, and resources.

Plaintiff identified common documents, common procedures, and common practices that illustrate the scope and extent of Defendants' right to control all Distributors. On this record, the District Court rejected Defendants' position and found common, predominating proof of Defendants' right to control. (*See* Order at 7 ("When I consider the overarching concern for the right to control the progress of the work, as distinct from particular instances of actual control …, it is my assessment that proof of the right to control rests upon predominantly common evidence.").) That sound ruling is at the heart of Defendants' petition.

## III. DISCUSSION

To obtain interlocutory appeal under Rule 23(f), a defendant must show either that "the grant of class status raises the stakes of the litigation so substantially that

the defendant likely will feel irresistible pressure to settle" (the so-called defendant's "death knell") or that an appeal is necessary to "lead to clarification of a fundamental issue of law." *Waste Mgmt. Holdings, Inc. v. Mowbray*, 208 F.3d 288, 293 (1st Cir. 2000). In addition to these categories, this Court has also recognized its discretion to take an appeal under "special circumstances." *See, e.g., In re Sepracor Inc.*, No. 05-8101, 2005 WL 3782325 at *1 (1st Cir. Dec. 7, 2005). Defendants fail to supply grounds for interlocutory appeal under any of these categories.

## A. Defendants have not demonstrated any "irresistible pressure to settle" that signals the death knell of their case.

To satisfy the defendant's death knell, a petitioner must demonstrate that class certification creates "irresistible pressure to settle." This requires the petitioner to show economic duress: "[W]hat might be 'ruinous' to a company of modest size might be merely unpleasant to a behemoth[.]" *Waste Mgmt. Holdings., Inc.*, 208 F.3d at 294-95; *see also Tardiff v. Knox County*, 365 F.3d 1, 3 (1st Cir. 2004) (finding petitioners satisfied defendant's death knell with "financial and similar information" regarding their ability to withstand judgment).

Defendants summarily cite the death knell but make no effort to prove it sounded. Class certification significantly advances claims of the approximately 100 Distributors at issue in this case, but their aggregate best-case recovery is in the range of millions to tens of millions of dollars. That amount is dwarfed by Flowers Foods' reported annual revenue of $3.9 billion in 2016. (Doc. No. 191-2 at *27.) As a result,

class certification causes no significant economic duress on Defendants, and they cannot establish defendant's death knell.[2]

## B. Defendants have not identified an unsettled *and* important question that calls for clarification of a fundamental issue on interlocutory appeal.

This Circuit has cautioned against interlocutory appeal based on a purported need to clarify a "fundamental issue": "[A] creative lawyer almost always will be able to argue that deciding her case would clarify some 'fundamental' issue. But interlocutory appeals should be the exception, not the rule[.]" *Waste Mgmt. Holdings, Inc.*, 208 F.3d at 294.

For this reason, this Circuit has established a high threshold for determining whether an issue is "fundamental" enough to justify interlocutory appeal. The issue needs to be unsettled *and* important. *Waste Mgmt. Holdings, Inc.*, 208 F.3d at 294. And not just any kind of important: the issue must be "important to the particular litigation as well as important in itself and likely to escape effective review if left hanging until the end of the case." *Id.* If Defendants fail to show that an issue "will have a very significant impact, either on its own litigation or on a large set of similar, existing cases," the issue is not important enough to be fundamental. *Sepracor Inc.*, 2005 WL 3782325 at *1.

---

[2] After a similar class of Distributors was certified in the Western District of North Carolina, Flowers also petitioned for Rule 23(f) interlocutory appeal. That petition was denied, and in the meantime, Flowers continued litigating that case until the eve of trial. *See Flowers Foods, Inc. v. Rehberg*, No. 15-161 (4th Cir.).

Rather than addressing the importance of each issue raised in their petition, Defendants broadly assert "legal questions of general importance[.]" (Pet. at 20.) Without proof, Defendants say that "[c]lass action lawsuits challenging independent contractor status are on the rise" (Pet. at 20), implying that is enough to make their issues important.[3] With these arguments, Defendants sidestep this Circuit's standard, which requires "a very significant impact" on this case or a large set of similar cases. *Cf. Sepracor, Inc.*, 2005 WL 3782325 at *1. Because Defendants do not identify unsettled issues that meet this threshold, they fail to establish any fundamental issue justifying interlocutory appeal.

1.      **Because Defendants' petition concedes a legal question common to the class, and because the District Court's commonality ruling is based on well-settled principles of law, there is no "fundamental issue" as to commonality.**

Defendants argue in part that a "fundamental issue" arises out of the District Court's commonality ruling. Rule 23(a)(2) requires "questions of law or fact common to the class," and the District Court recognized these questions must have "the capacity … to generate common *answers* apt to drive the resolution of the

---

3       Defendants express concern about "potential exposure to defendants" that is "enormous," purportedly "creating incentives to settle … non-meritorious cases." (Pet. at 20.) While this argument echoes the defendant's death knell, Defendants do not claim *they* are being exposed to enormous liability, or that *they* have an incentive to settle non-meritorious cases. Defendants' alleged grievance, therefore, is based on speculation about unquantified liabilities incurred by hypothetical defendants.

litigation." (*See* Order at 3 (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011)).)

At the outset of their petition, Defendants tacitly acknowledged the existence of a central question in this case, noting class proceedings "hinge" on Distributors' status as employees or independent contractors. (*See* Pet. at 3.) As numerous federal courts have ruled, because that central dispute has the capacity to generate common answers under state wage laws, it is more than enough to satisfy commonality. *See, e.g., Venegas v. Global Aircraft Serv., Inc.*, 159 F. Supp. 3d 93, 98 (D. Me. 2016) ("That single question was enough to satisfy 'commonality' in a similar, post-*Dukes* class action …."); *Scovil v. FedEx Ground Package Sys., Inc.*, 886 F. Supp. 2d 45, 48 (D. Me. 2012) ("[L]iability is determined by whether the drivers are properly treated as employees or independent contractors. That satisfies commonality[.]").[4]

Consistent with this well-established line of authority, the District Court ruled that Plaintiff satisfied commonality. (Order at 3 (holding that misclassification was a "core common issue" and that "[a] classwide proceeding can generate common answers").) In their petition, Defendants do not cite a single case to the contrary or

---

[4]     *See also DaSilva v. Border Transfer of MA, Inc.*, 296 F. Supp. 3d 389, 401 (D. Mass. 2017); *Meyer v. U.S. Tennis Ass'n*, 297 F.R.D. 75, 82-23 (S.D.N.Y. 2013); *Dalton v. Lee Pubs.*, 270 F.R.D. 555, 559 (S.D. Cal. 2010); *Phelps v. 3PD, Inc.*, 261 F.R.D. 548, 552 (D. Or. 2009); *Nerland v. Caribou Coffee Co.*, 564 F. Supp. 2d 1010, 1031 (D. Minn. 2007); *Rehberg v. Flowers Baking Co. of Jamestown, LLC*, No. 12-596, 2015 WL 1346125 at *7-*8 (W.D.N.C. Mar. 24, 2015).

any other indication of an unsettled legal proposition.[5] They fail to identify any important legal principle, and merely question "the type of evidence sufficient to establish class certification." (Pet. at 20.) Defendants thus cannot show the District Court's uncontroversial ruling has a "very significant impact" on this or any other case. For these reasons, commonality does not supply a "fundamental issue" that justifies the disruptions of interlocutory appeal.

> ## 2. Because the District Court properly examined whether Plaintiff's claims and those of Distributors arise out of a common course of conduct, there is no "fundamental issue" as to typicality.

Defendants also suggest there is a "fundamental issue" on typicality. On this point, the District Court paraphrased Rule 23(a)(3), observing that Plaintiff's claim must be "typical of the claims held by the putative class members." (*See* Order at 3.) It then added the unremarkable proposition that, to assess whether a plaintiff's claim is typical of class members' claims, courts consider whether the claims "arise from the same practice or course of conduct that gives rise to the claims of other class members, and … are based on the same legal theory." (*Id.* at 3-4 (quoting *Garcia-Rubiera v. Calderon*, 570 F.3d 443, 460 (1st Cir. 2009).)

---

[5]     Defendants argue the District Court did not address "significant differences among the class members that would render the generation of common answers … impossible[.]" (Pet. at 14-15.) This argument improperly conflates commonality with the predominance requirement in Rule 23(b)(3), which requires consideration of whether "questions of law or fact common to class members predominate over any question affecting only individual members[.]"

Relying on this proposition, the District Court considered whether there was a common practice or course of conduct underlying the claims by Plaintiff and the Distributors. Based on the demands of the distributorship, the District Court found there was. (Order at 4.) This finding was well supported by the factual record, which easily establishes a common, material course of conduct: that Defendants classified Plaintiff and all Distributors as independent contractors under substantially identical Distributor Agreements. (Doc. No. 191-4 at *3; Doc. No. 191-15 at *20-*21; Doc. No. 191-17.)

Defendants' complaint is that the District Court did not adopt their preferred version of the facts. They cite a few facts purportedly unique to Plaintiff, without saying why these facts are relevant to typicality, much less how they disprove a "common practice or course of conduct." (*See* Pet. at 16.) As the District Court correctly held, typicality is determined "with reference to the [defendant's] actions, not with respect to particularized defenses it might have against certain class members." (*See* Order at 4 (quoting *In re Neurontin Mktg. & Sales Pracs. Litig.*, 244 F.R.D. 89, 106 (D. Mass. 2007)).) This shows that the District Court considered, but rejected, Defendants' disproportionate focus on Plaintiff.

Defendants fail to identify any legal error, or unsettled legal principle, in the District Court's typicality analysis. Nor do they suggest the District Court lacked factual support for its findings. Under these circumstances, Defendants cannot claim

the District Court's typicality analysis raises an issue that is "important to the particular litigation as well as important in itself." *Cf. Waste Mgmt. Holdings, Inc.*, 208 F.3d at 294. To the contrary, the District Court's typicality holding resolves a "familiar and almost routine issue" that should not be the subject of interlocutory review. *See id.*; *cf. Sepracor Inc.*, 2005 WL 3782325 at *1 (finding petitioner showed no "very significant impact" in that case or "a large set of similar, existing cases"). As a result, typicality cannot supply a "fundamental issue" for interlocutory appeal.

> 3. **Defendants' mischaracterization of the District Court's order, coupled with the absence of legal error, indicate no "fundamental issue" as to predominance.**

Defendants also suggest a "fundamental issue" is raised by the District Court's predominance analysis. That argument is plagued by two major flaws: it misstates critical portions of the District Court's predominance analysis, and it overstates the importance of Defendants' preemption arguments under the Federal Aviation Administration Authorization Act (FAAAA).

> a. **Defendants misstate the facts and analysis that form the basis for the District Court's predominance ruling.**

Defendants accuse the District Court of "fail[ing] to conduct a rigorous analysis, with no citations and virtually no discussion of the record evidence." (Pet. at 18.) But that accusation is not borne out by the District Court's order:

> Whether common questions predominate is the most closely contested issue. In opposition to Plaintiff's motion, Defendants have identified several ways in which the

members of the putative class are different, including, in particular, the fact that some maintain more than one territory and/or employ assistants to help them in their work and, in a few instances, to perform the work. In addition, various members of the class describe their day-to-day subjective experience differently, and in potentially significant ways. For example, some members describe a greater degree of leeway in relating to which products they order from Defendants and how they go about the tasks of filling customers' shelves, and a greater degree of perceived opportunity to expand sales within their districts, than do other distributors. For these differences to predominate over the common questions, I would have to conclude that they are the real drivers of the employee-status analysis under Maine law.

(Order at 5-6.) This discussion faithfully captures the record evidence and sets forth Defendants' position, both in class certification proceedings below and their petition to this Court. Under these circumstances, Defendants cannot reasonably suggest the District Court's order has "virtually no discussion of the record evidence." The true thrust of Defendants' argument is not that the District Court failed to analyze their argument, but instead rejected their conclusion.

Defendants further argue the District Court did not properly analyze the common-law factors for determining whether workers are employees or independent contractors under Maine law. The District Court discussed this standard at length, reciting the eight factors and reiterating the overriding principle that "it is the right to control that is demonstrative of an employee-employer relationship." (Order at 7

(citing *Scovil*, 886 F. Supp. 2d at 52).) Defendants have not contested that, on these basic points, the District Court stated the law correctly.

The District Court went on to observe that, with due regard for the overriding right for control, two common-law factors are "deserving of somewhat greater weight": "the nature of the work" and "its importance to the employer's business operations." (Order at 7 (citing *Scovil*, 886 F. Supp. 2d at 53).) That proposition is soundly supported by Maine law. *See, e.g., Venegas*, 159 F. Supp. 3d at 101 (" 'right to control, the nature of the work, and its importance to [the employer's] business' are the most critical factors") (quoting *Scovil*, 886 F. Supp. 2d at 52-53); *Scovil*, 886 F. Supp. 2d at 53 (citing *Legassie v. Bangor Pub. Co.*, 1999 ME 180 ¶ 8 n. 4, 741 A.2d 442, 445 (Me. 1999) for the proposition "when a workers' protective statute … is being interpreted, more attention should be given … [to] the nature of the work and its importance to the employer's business").

While the District Court found these two factors are "deserving of somewhat greater weight," Defendants' petition tramples this nuance, arguing that "the District Court improperly treated these two factors as controlling." (Pet. at 23.) Once again, Defendants mischaracterize the District Court's reasoning. What the order reveals is that, under Rule 23(b)(3), the District Court fully considered Maine's classification standard and assessed whether common or individualized questions predominate:

> When I consider the overarching concern for the right to control the progress of the work, as distinct from particular

instances of actual control exerted by Defendants over individual distributors, it is my assessment that proof of the right to control rests on predominantly common evidence. Additionally, to the extent that various factors may allow for some debate over the significance of individualized proof, the two factors deserving of somewhat greater weight similarly turn on predominantly common evidence. That is, evidence regarding the nature of the work and its importance to Defendants' business is common to the group and is much a part of Plaintiff Noll's experience as it would be part of the experience of the putative class members.

(Order at 7-8.) In reaching this outcome, the District Court reasoned that Defendants improperly relied on "particular instances of actual control" and instead concluded that the *right to control* rested on common proofs. In doing so, the District Court correctly applied the Maine worker classification standard.

### b. Because Defendants' FAAAA preemption argument lacks merit and was not dispositive in the class certification order, it cannot supply a "fundamental issue."

Defendants further argue that, because one factor of the Maine classification standard is preempted by federal law under the FAAAA, the District Court did not properly weigh whether common or individual questions predominate. (*See* Pet. at 19-20.) They derive this argument from *Schwann v. FedEx Ground Package System, Inc.* 813 F.3d 429 (1st Cir. 2016).

There the parties disputed whether FedEx delivery drivers were properly classified as employees or independent contractors under Massachusetts law. *Id.* at 435. In that state, workers are *presumed* to be employees unless the putative

employer demonstrates that (1) the worker is free from control in performance of the work, both under contract and in fact; (2) the service is performed outside the putative employer's usual course of business; *and* (3) the worker is customarily engaged in an independently established trade, occupation, business, or profession. *See id.* at 433 (quoting Mass. Gen. Laws ch. 149, § 148B(a)).

On cross motions for summary judgment, plaintiffs argued their services were not outside FedEx's usual course of business, and thus FedEx could not overcome the presumption that plaintiffs were employees. *See id.* at 438. FedEx argued that, because this prong stopped FedEx from using independent contractors to undertake its services as a motor carrier, it was preempted by the FAAAA. *See id.* at 437-39. In a narrowly crafted ruling, this Court held the second prong was preempted by the FAAAA, but the first and third prongs were not preempted and could still determine independent-contractor status. *Id.* at 439, 441. In reaching this outcome, this Court contrasted Massachusetts law with other states where "the relationship between the service performed and the usual course of the enterprise's business is simply one among many factors to be considered." *Id.* at 438.

In opposition to class certification below, Defendants spent a single paragraph on FAAAA preemption. Ignoring the *Schwann* court's distinction made between the mandatory prongs under Massachusetts law and other states' multi-factor standards, Defendants argued FAAAA preemption should also extend to the eighth Maine

factor, "whether the work is part of the regular business of the employer." (*See* Doc. No. 194 at \*37-\*38.)

This argument, however, misconstrues the ruling in *Schwann*. This Court held the second Massachusetts prong is preempted because, in the absence of preemption, this prong categorically prevents motor carriers from using independent contractors to perform such carriers' services. *See id.* at 438-39.

In comparison, the eighth Maine factor is not determinative: because it is necessarily considered with other factors, this factor cannot categorically preclude common carriers from using independent contractors to provide services. Applying virtually identical reasoning, the Ninth Circuit recently ruled that the FAAAA cannot preempt individual factors in a multi-factor employment classification standard. *See California Trucking Ass'n v. Su*, 903 F.3d 953, 964 (9th Cir. 2018) (considering multi-factor standard under California law). That reasoning is fatal to Defendants' argument.

Even if Defendants' argument had merit, it would not have altered the District Court's class certification order. Defendants suggest that, if the eighth factor was removed from the analysis, this radically reshapes the outcome. But while the District Court gave "somewhat greater weight" to that factor, it was not decisive. Most significantly, it does not impact the District Court's core predominance ruling,

that "proof of the right to control rests upon predominantly common evidence."[6] (Order at 7.)

The ultimate question is whether Defendants identified, in the District Court's predominance analysis, a "fundamental issue" that justifies interlocutory appeal. Defendants fail to articulate an unsettled question of law, and their misreading of *Schwann* does not create one. Even if this question were unsettled, Defendants' incidental, one-paragraph argument about one misclassification factor does not have a "very significant impact" in this case or any other. Because Defendants fail to show any unsettled, important issue in the District Court's ruling, no "fundamental issue" is present.

## C.    Defendants have not asserted other special circumstances that call for an interlocutory appeal.

Defendants briefly note that this Court may take an interlocutory appeal under "special circumstances." (Pet. at 10.) Their petition is otherwise silent about what those circumstances might be. As the preceding arguments demonstrate, Defendants repeatedly fall short of grounds for interlocutory appeal, either by death knell or with regard to any "fundamental issue." As a result, there is no cause for an exceptional

---

[6]    If there was a viable question on whether the FAAAA preempts the eighth factor of the Maine classification analysis, it would be common to all Distributors, reinforcing the conclusion that common issues predominate.

interlocutory appeal. *Cf. Waste Mgmt. Holdings, Inc.*, 208 F.3d at 294 (stating that interlocutory appeals are "the exception, not the rule").

## IV.   CONCLUSION

Defendants' arguments are factual disputes cloaked as legal error. Through their petition, Defendants seek an opportunity to revisit the merits of their arguments during ongoing litigation. But they fail to establish that class certification is the death knell for their case, or identify a fundamental issue that justifies the extraordinary disruption of an interlocutory appeal. Plaintiff respectfully requests that Defendants' petition be denied.

Dated this 8th day of February, 2019.

/s/ Scott Moriarity

Shawn J. Wanta
Christopher D. Jozwiak
Scott A. Moriarity
BAILLON THOME JOZWIAK & WANTA LLP
100 South Fifth Street, Suite 1200
Minneapolis, MN 55402
Telephone: (612) 252-3570
Fax: (612) 252-3571
sjwanta@baillonthome.com
cdjozwiak@baillonthome.com
samoriarity@baillonthome.com

J. Gordon Rudd, Jr.
David Cialkowski
ZIMMERMAN REED PLLP
111 IDS Center
80 South 8th Street
Minneapolis, Minnesota 55402
Telephone: (612) 341-0400
Fax: (612) 341-0844
Gordon.Rudd@zimmreed.com
David.Cialkowski@zimmreed.com

Susan E. Ellingstad
Rachel A. Kitze Collins
Brian D. Clark
LOCKRIDGE GRINDAL NAUEN P.L.L.P.
100 Washington Avenue South, Suite 2200
Minneapolis, MN 55401
Telephone: (612) 339-6900
Fax: (612) 339-0981
seellingstad@locklaw.com
rakitzecollins@locklaw.com
bdclark@locklaw.com

Charles E. Schaffer
LEVIN, SEDRAN & BERMAN
510 Walnut Street
Suite 500
Philadelphia, Pennsylvania 19106
Telephone: (215) 592-1500
Fax: (215) 592-4663
cschaffer@lfsblaw.com

Rebecca Webber
SKELTON, TAINTOR & ABBOTT
95 Main Street
Auburn, Maine 04210
Telephone: (207) 784-3200
Fax: (207) 784-3345
rwebber@sta-law.com

*Attorneys for Plaintiff*

# CERTIFICATE OF SERVICE

I certify that on this 8th day of February, 2019, this Response to Defendants'

Petition for Leave to Appeal was filed electronically and that notice was transmitted

to all parties via this Court's electronic filing system.

Frederick B. Finberg, Esq.
rfinberg@thebennettlawfirm.com

Kevin P. Hishta, Esq.
kevin.hishta@ogletreedeakins.com

Peter Bennett, Esq.
pbennett@ogletree.com

Timothy H. Powell, Esq.
tpowell@thebennettlawfirm.com

The following individuals were served by U.S. Mail:

Margaret S. Hanrahan. Esq.
Ogletree, Deakins, Nash, Smoak & Steward
201 South College St., Suite 2300
Charlotte, NC 28244

C. Garner Sanford Jr., Esq.
Ogletree, Deakins, Nash, Smoak & Steward
191 Peachtree St NE, Suite 4800
Atlanta, GA 30303

/s/ Scott Moriarity
SCOTT MORIARITY
ATTORNEY FOR PLAINTIFF